UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DARIO FERNANDEZ,

     Plaintiff,

   v.

WINDMILL DISTRIBUTING CO., <u>et al.</u>

     Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 02/04/2016

No. 12-cv-01968

**OPINION**

Plaintiff Dario Fernandez has sued his former employer, Windmill Distributing Co., L.P. (Windmill), a related entity, Phoenix Beverages, Inc. (Phoenix), and ten John Doe corporations that are owned and/or controlled by Windmill, for compensatory and punitive damages, as well as attorney's fees and costs. After Fernandez was injured on the job in 2009, he sued his employers for allegedly denying him his rights under the Family Medical Leave Act (FMLA), 28 U.S.C. § 2601 <u>et seq.</u>, the New York State Human Rights Law (NYSHRL), N.Y. McKinney's Exec. Law § 290 <u>et seq.</u>, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code, § 8–101 <u>et seq.</u>

To date, only Windmill and Phoenix (together, defendants)[1] have appeared to defend this action. They argue that Fernandez's statutory claims lack merit and that those claims are subject to mandatory arbitration in the first instance.

---

[1] Windmill is the broader trade name for various distribution operators beneath it. Specifically, Windmill operates in Brooklyn, Queens, and Staten Island through Phoenix Beverages, Inc., and in Manhattan and the Bronx through Beehive Beer Distributing Corp. <u>See</u> Defs.' Mem. Law Supp. Mot. Dismiss, ECF No. 42, at 1. The court further understands that Windmill does

Following the parties' failed attempt to resolve their dispute in mediation, defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  See ECF No. 40.  Although the parties have taken no discovery, defendants' motion to dismiss attaches new documents and contains information that far exceeds the pleadings.   Fernandez argues that conversion of defendant's Rule 12(b)(6) motion into a Rule 56 motion is warranted, and defendants agree.

As set forth in the opinion below, the court concludes that Rule 56 conversion is proper only as to the arbitration issue.  The court further finds that Fernandez's statutory claims need not be arbitrated.  The court will measure Fernandez's remaining substantive legal allegations against the motion-to-dismiss standard.   As to those claims, the court holds that the amended complaint inadequately pleads claims of FMLA interference and retaliation and NYCHRL retaliation.   However, defendants' motion to dismiss Fernandez's of NYCHRL and NYSHRL disability discrimination claims is denied.

### The Amended Complaint

The following facts are drawn from the amended complaint.  Defendants operate a beer and wine distribution company.   Plaintiff Fernandez began working as a delivery driver for defendants in 2003.  At all times during his

---

business as Beehive; that Windmill also does business as Phoenix; and that Phoenix also does business as Beehive. Collectively, these entities will be termed "Windmill" for purposes here. "Windmill" does not include John Doe defendants 1–10, which remain unidentified and which have not answered the Amended Complaint or otherwise appeared in this action.

employment, Fernandez was a member of Teamsters Local 812, a union representing employees in the beverage industry.

Part of Fernandez's job was to unload kegs and cases of beer.  In August 2009, Fernandez injured his back while lifting a keg during a beer delivery. Fernandez notified defendants' human resources director, Vivian Fiscaletti, of his injury and provided a doctor's note recommending that he take time off work. Defendants did not apprise Fernandez of his rights under the FMLA, nor did they notify Fernandez that he was not allowed to take a leave of absence.  Fernandez took time off work beginning on September 29, 2009.  He returned to work nearly four months later, on January 20, 2010, after presenting to his supervisor a medical clearance letter.

On January 25, 2010, five days after returning to work, Fernandez's supervisor, Charlie Chae, directed Fernandez to meet with him, Fiscaletti, a manager named Oscar Ruiz, and one other unnamed employee.  During this meeting, Ruiz and the others pressed Fernandez for more information about his leave of absence and asked for the names of the doctors who treated him. Fernandez believed he was about to lose his job.  However, Chae ordered Fernandez to return to work.

Two months after the meeting, on March 25, 2010, one Juan Hernandez informed Fernandez that his employment had been terminated.  The complaint does not describe Hernandez's role in defendants' business, if any, or his relationship to Fernandez, if any.  And although Fernandez received no official

termination notice from defendants, he apparently ceased working at defendants' warehouse anyway.

## The Motion to Dismiss

Defendants move to dismiss the amended complaint, arguing that Fernandez was bound to arbitrate his employment-related claims and that, in any event, the amended complaint fails to state a cause of action under the NYSHRL and the NYCHRL.   The motion to dismiss is accompanied by a declaration, which, in turn, appends as exhibits two versions of the collective bargaining agreement (CBA) between Local 812 and Windmill.

Fernandez, in opposition, argues that defendants' motion to dismiss should be converted into a motion for summary judgment because the motion to dismiss asks the court to consider evidence outside of the amended complaint. Fernandez has also appended materials to bolster his position that he was not bound to arbitrate his labor dispute, and that the amended complaint sufficiently states claims under the FMLA, the NYSHRL, and the NYCHRL. In the alternative, Fernandez urges the court to allow him leave to further amend his complaint.

Defendants appear to agree that their motion to dismiss should be converted into one for summary judgment.   Indeed, defendants submitted additional documents to support their positions that this case is ripe for summary judgment and that the court should decide in defendants' favor.

## Conversion under Federal Rule of Civil Procedure 12(d)

As an initial matter, the court must determine whether to convert defendants' motion to dismiss into a motion for summary judgment.

Under Federal Rule of Civil Procedure 12(d), when parties present matters outside the pleadings on a motion to dismiss, the court must either decide the motion based on the complaint alone, without considering the additional material, or else convert the motion to one for summary judgment under Rule 56. Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000). Should the court decide to convert the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The ultimate decision of whether to convert a Rule 12(b)(6) motion into a Rule 56 motion is discretionary. See id. A court may also convert only part of a 12(b)(6) motion into a Rule 56 motion. See, e.g., Zaldivar v. Anna Bella's Cafe, LLC, No. 11-cv-1198, 2012 WL 642828, at *4 (E.D.N.Y. Feb. 28, 2012). Whether a court is considering either total or partial conversion, "[t]he essential inquiry . . . is whether the non-movant 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" Krijn v. Pogue Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir. 1990) (quoting Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Labs., 850 F.2d 904, 911 (2d Cir. 1988)). Once a court has found that parties should reasonably have recognized the possibility of conversion, neither party can complain that they were deprived of an adequate opportunity to provide the materials they deemed necessary to support their motion. See Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004) (citing Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999)).

Here, Fernandez plainly had notice that defendant's motion could be converted; Fernandez himself argues that conversion is proper if the court decides to consider materials outside the amended complaint. Pl.'s Opp. Mem. L., ECF No. 49, at 7–8. Yet Fernandez's opposition muddles Rule 12(b)(6) and Rule 56 standards. Plaintiff at once recites the motion to dismiss standard, <u>see</u> <u>id.</u> at 2–5, but also recites a list of material facts that "are to be accepted as true," much in the style of a Rule 56.1 statement, <u>see</u> <u>id.</u> at 5–7. Fernandez also submitted a declaration in support of his opposition, to which he appended seven exhibits. In other words, Fernandez has also asked the court to consider materials outside of the pleadings.

Defendants have expressed "no objection" to Fernandez's submission of materials outside of the pleadings, and thereafter refer to their submission as a "motion for judgment as a matter of law." <u>See</u> Reply Mem. L., ECF No. 53, at 3. The parties do not object to conversion, and they have not invoked Federal Rule of Civil Procedure 56(f), which provides that, if a party opposing summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition," the court may deny the motion on that basis or order other appropriate relief, such as additional discovery. <u>See</u> Fed. R. Civ. P. 56(f).

Having considered the parties' submissions, the court finds that the parties reasonably recognized that the court would convert defendants' Rule 12(b)(6) motion into a Rule 56 motion. The court also finds that the parties had reasonable opportunities to present pertinent extrinsic material. But while

6

defendants' Rule 12(b)(6) motion is suitable for conversion under Rule 56, the court will convert only part of the motion. Rather than ruling summarily on the facts surrounding statutory claims on which no discovery has been taken, the court will convert part of defendants' motion to dismiss into a motion for partial summary judgment and decide the issue of mandatory arbitration—and this issue alone—on the merits. The court will treat the remaining NYSHRL and NYCHRL allegations under the standard for a motion to dismiss.

## **Arbitration**

### I.   **Standard of Law**

A court may grant a motion for summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Globecon Grp., LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he is entitled to summary judgment. Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

## II.   Discussion

Windmill contends as a threshold matter that this action is improper because Fernandez's claims were subject exclusively to the grievance and arbitration procedures set forth in the CBA.  The court disagrees.

A union-negotiated CBA cannot waive rights to bring a federal statutory claim in a judicial forum unless that waiver is clear and unmistakable.  Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 79–80 (1998).  Arbitration clauses purporting to encompass "any dispute concerning the interpretation, application, or claimed violation of a specific term or provision" of a CBA "fall[] far short of a specific agreement to submit all federal claims to arbitration." Rogers v. N.Y. Univ., 220 F.3d 73, 76 (2d. Cir. 2000).

In 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009), the Supreme Court provided further clarity on how to analyze arbitration clauses in CBAs.  Pyett involved a suit for employment discrimination under the Age Discrimination in Employment Act (ADEA).  The employees were subject to a union-negotiated CBA, which the union was empowered to negotiate through the National Labor Relations Act (NLRA).  The CBA required union members to submit all claims of employment discrimination to binding arbitration under the CBA's grievance and dispute resolution procedures.  It also prohibited discrimination under the specific federal statutes, including the ADEA, that were enumerated in the CBA. It provided that all such claims under those statutes "shall be subject to the grievance and arbitration procedures . . . as the sole and exclusive remedy for violations.  Arbitrators shall apply appropriate law in rendering decisions based

8

upon claims of discrimination." Pyett, 556 U.S. at 252 (internal citation and quotation marks omitted).

The Court ultimately held that employees' ADEA claims were arbitrable because the CBA clearly and unmistakably covered ADEA claims, and because the ADEA does not except itself from the NLRA. Id. at 257–58, 260. It was crucial to the Court's ruling that the relevant CBA specifically named the antidiscrimination statutes subject to arbitration. In this way, Pyett was distinguishable from prior in which the Court had held that an employee's CBA did not mandate arbitration of statutory antidiscrimination claims. Id. at 260–65 (analyzing Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), Barrentine v. Arkansas-Best Freight Sys., Inc., 250 U.S. 728 (1981), and McDonald v. W. Branch, 466 U.S. 284 (1984)). Alexander and its progeny, including Barrentine and McDonald, all involved CBAs that did not expressly reference the statutory claim at issue. The Court held in each instance that the employees "had not agreed to arbitrate their statutory claims." See Pyex, 556 U.S. at 263–64 (internal quotation marks omitted). This remained true despite the breadth of the other CBA language in those cases. See id. at 262.

In keeping with Pyett, courts in this circuit have concluded that, in cases where the operative CBA specifically referenced statutes, as did the CBA in Pyett, an employee has clearly and unmistakably waived his statutory right to litigate those statutory claims. See, e.g., Duraku v. Tishman Speyer Props., Inc., 714 F. Supp. 2d 470, 474–75 (S.D.N.Y. 2010) (staying Title VII, NYSHRL and NYCHRL claims, including claims for retaliation); Germosen v. ABM Indus. Corp., No. 13-

9

cv-1978, 2014 WL 4211347, at *6 (S.D.N.Y. Aug. 26, 2014) (involving claims under Title VII, the Americans with Disabilities Act, the NYSHRL, and the NYCHRL); Johnson v. Tishman Speyer Properties, L.P., No. 09-cv-1959, 2009 WL 3364038, at *3 (S.D.N.Y. Oct. 16, 2009) (dismissing Title VII, NYSHRL and NYCHRL claims for arbitration).

Pyett does not plainly apply to cases in which the CBA does not explicitly reference the statutory rights subject to arbitration—that is, CBAs whose arbitration provision is not a clear and unmistakable waiver of statutory rights. Several post-Pyett cases have addressed this posture and arrived at different results. Compare, e.g., Shipkevich v. Staten Island Univ. Hosp., No. 08-cv-1008, 2009 WL 1706590, at *2 (E.D.N.Y. June 16, 2009) (finding that the CBA did not "clearly and unmistakably" waive certain statutory rights because the CBA did not specifically identify those statutes), with Hodges v. All Transit LLC, No. 14-cv-2587, 2014 WL 537748, at *1–2 (E.D.N.Y. Feb. 7, 2014) (holding the opposite based on the reasoning of an out-of-district opinion, Babcock v. Butler County, No. 12-cv-394, 2012 WL 1655737 (W.D. Pa. May 10, 2012)).

However, as this court held in Alderman v. 21 Club Inc., 733 F. Supp. 2d 461, 468–70 (S.D.N.Y. 2010), "[a]rbitration clauses that cover any dispute concerning the interpretation, application, or claimed violation of a specific term or provision of the collective bargaining agreement do not contain the requisite 'clear and unmistakable' waiver because the degree of generality in the arbitration provision falls far short of a specific agreement to submit all federal claims to arbitration." Id. (internal citations and quotation marks omitted).

10

This reasoning still holds. Since this court's decision in <u>Alderman</u>, our sister courts have come to similar conclusions in analogous cases. <u>See, e.g.</u>, <u>Viruet v. Port Jervis City Sch. Dist.</u>, No. 11-cv-1211, 2013 WL 4083229, at *6 (S.D.N.Y. Aug. 13, 2013) (involving a CBA that did not state that claims made pursuant to Title VII were subject to its grievance procedures); <u>Quintanilla v. Suffolk Paving Corp.</u>, No. 09-cv-331, 2011 U.S. Dist. LEXIS 34193 at *2 (E.D.N.Y. Feb. 10, 2011) (same).

Moreover, the Supreme Court in <u>Pyett</u> did not address cases where the applicable CBA contained a broad definition of what is arbitrable as well as a general nondiscrimination clause, but did not specifically reference statutory discrimination provisions. <u>See</u> <u>Pyett</u>, 556 U.S. at 257–58, 260. Indeed, the Court was explicit about this distinction when it differentiated the <u>Pyett</u> case facts from prior cases like <u>Alexander</u>, in which the CBA "did not expressly reference the statutory claim at issue." <u>Id.</u> at 263. Therefore, as the Court suggested, <u>Alexander</u> and its progeny control the outcome here, where the CBA does not specifically reference any antidiscrimination statutes.

The CBA in this case was entered into as of January 16, 2009 and was in effect when the events leading to this cause of action occurred on August 28, 2009. <u>See</u> Mot. Dismiss Ex. 1, ECF No. 41-1, preamble; Am. Compl. ¶ 27. It represents an agreement between Local 812 and LongFeng Trucking, LLC. <u>Id.</u> LongFeng is not involved in this case, but, according to the CBA, is the related successor to Windmill. The CBA further provides that Windmill does business as Beehive and that Beehive should be considered a division of LongFeng. <u>Id.</u>

By transitive property, Windmill should also be considered a division of LongFeng. Indeed, Phoenix, Beehive, and Windmill are all divisions of LongFeng. Thus, insofar as the CBA refers to LongFeng, the CBA also applies to Phoenix, Beehive, and Windmill.[2]

The CBA provides in relevant part:

> "All disputes between [LongFeng] and Beehive and/or any employees shall be promptly taken up for adjustment by [Local 812] through its duly authorized agents. In the event that no adjustment shall be possible by direct negotiation between Beehive and [Local 812], with thirty (30) days thereafter the matter may be submitted by [Local 812] for arbitration and such arbitrator's decision or award shall be final and binding upon both parties to this Agreement.
>
> The parties shall first attempt to agree on the arbitrator to hear the matter, and failing agreement, the matter shall be referred to the American Arbitration Association for the submission of panels of arbitrators for the parties' selection of a mutually agreeable arbitrator.

ECF No. 41-1, Art. 12.

The CBA also contains an antidiscrimination clause that reads:

> Beehive and [Local 812] agree not to discriminate against any individual with respect to hiring, compensation, or other terms and conditions of employment because of such individual's race, color, religion, sex, national origin, age, handicap that does not prevent performance of the essential duties of the

---

[2]     Neither party disputes that Windmill is subject to the CBA, even though LongFeng is the primary signatory to the CBA. LongFeng is listed as the "related successor" to Windmill, though it is unclear what LongFeng succeeded to. See Mot. Dismiss Ex. 2, ECF No. 41-2, Preamble. Indeed, neither party mentions the existence or relevance of LongFeng in the briefing or pleadings. Because neither party has asserted that Windmill is not subject to the arbitration or antidiscrimination provisions of the CBA, and because the court sees no clear reason to find otherwise, the court assumes that Windmill is subject to the CBA.

> job, or sexual preference, nor will they limit, segregate or classify employees in any way to deprive any individual employment opportunities because of race, color, religion, sex, national origin, age, handicap that does not prevent performance of the essential duties of the job, or sexual preference. Any claim by an employee of any such discrimination will be submitted to arbitration under Article 12 of this Agreement as the exclusive forum for resolving such a claim.

ECF No. 41-1, Art. 14.

The CBA is broad and requires arbitration for "all disputes," but its antidiscrimination section does not reference any specific antidiscrimination statutes that would be subject to exclusive arbitration, nor does it specify whether arbitration is required for state or federal claims at all. In view of post-Pyett precedent in this circuit, the court holds that the arbitration and antidiscrimination clauses above do not mandate arbitration of Fernandez's statutory claims. The court therefore finds that the CBA does not require Fernandez to arbitrate his statutory claims, and Windmill's motion for summary judgment as to this issue is denied.

## **Statutory Claims**

Having found that the CBA does not require Fernandez to arbitrate his statutory antidiscrimination claims, the court now turns to Windmill's motion to dismiss Fernandez's statutory claims under Federal Rule of Civil Procedure 12(b)(6).

### I.   **Standard of Law**

On a Rule 12(b)(6) motion to dismiss, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's

favor. Tsirelman v. Daines, 794 F.3d 310, 313 (2d Cir. 2015). A complaint asserting an employment-discrimination claim need not plead specific facts establishing a prima facie case of discrimination in order to survive a motion to dismiss. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514–15 (2002) (holding that, under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a Title VII complaint need not allege "specific facts establishing a prima facie case of discrimination" to survive a motion to dismiss); Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (applying the Swierkiewicz rule to NYCHRL and NYSHRL claims); Harper v. N.Y.C. Hous. Auth., 673 F. Supp. 2d 174, 179 (S.D.N.Y. 2009) (applying the Swierkiewicz rule to a FMLA retaliation claim). A plaintiff must simply plead "that [his] claims are plausible under Iqbal and Twombly" by "plead[ing] facts sufficient to state a claim to relief that is plausible on its face." Harper, 673 F. Supp. at 178, 180 (internal quotation marks omitted) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); see also Boykin v. KeyCorp, 521 F.3d 202, 212 (2d Cir. 2008).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011), (quoting Iqbal, 556 U.S. at 678); see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions"

14

or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

The plaintiff's burden at this stage is "minimal." Holcomb v. Iona Coll., 521 F.3d 130, 139 (2d Cir. 2008) (quoting Hicks, 509 U.S. at 506). If the plaintiff meets his burden, a "temporary presumption" of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 82–84 (2d Cir. 2015). If the employer articulates a reason, the burden ultimately shifts back to the plaintiff to show that the employer's reason was pretextual. Id.

## II.   Discussion

### A. FMLA Claims

Under the FMLA, eligible employees are entitled to twelve weeks of leave when they have a serious health condition. See 29 U.S.C. §§ 2611(2), 2612(a)(1)(D) (2012). At the end of the leave period, with few exceptions not relevant here, each eligible employee must be restored to his old position or an equivalent position. See id. § 2614(a). "The FMLA also provides eligible employees a private right of action to seek both equitable relief and money damages against any employer . . . should that employer interfere with, restrain, or deny the exercise of FMLA rights." Rodriguez v. Atria Senior Living Grp., Inc., 887 F. Supp. 2d 503, 513 (S.D.N.Y. 2012) (quoting Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 174 (2d Cir. 2006)) (internal quotation marks omitted).

15

The Second Circuit recognizes two types of FMLA claims—"interference" claims and "retaliation" claims.  See Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004) (per curiam).  Fernandez has asserted both types of claims, and this opinion discusses each in turn.

### 1. Interference Claim

Fernandez alleges that Windmill interfered with his right to take a federally protected leave of absence under the FMLA by failing to inform him of his right to take FMLA leave or to apprise him of the terms of FMLA leave.  Windmill argues that Fernandez has failed to adequately plead an interference claim.  At the motion to dismiss stage, Fernandez must have pled facts sufficient to make his FMLA interference claim possible.  Fernandez has not done so here.

Purported interference with FMLA rights must ultimately result in the denial of a benefit under the FMLA.  See Garraway v. Solomon R. Guggenheim Found., 415 F. Supp. 2d 377, 382 (S.D.N.Y. 2006).  Where the employee is not provided with the necessary information regarding the employer's FMLA leave policies, the employee is denied the ability to conform a desired period of leave to the employer's policies so as to preserve the right to reinstatement, a benefit at the crux of the FMLA's provisions.  "For example, where an employee uses leave which might be counted as vacation time, FMLA leave, or both, an employer's failure to provide notice that the leave counts against the FMLA allotment might interfere with the employee's ability to plan and use future FMLA leave to, for example, schedule elective surgery and recuperate from the surgery." Donnellan v. N.Y.C. Transit Auth., No. 98-cv-1096, 1999 WL 527901, at *4 &

16

n.10 (S.D.N.Y. Jul. 22, 1999); see also Ragsdale v. Wolverine Worldwide, Inc., 218 F.3d 933, 939–40 (8th Cir. 2000) (describing scenarios where an employer's failure to provide notice may interfere with an employee's substantive FMLA rights).

The failure to provide notice of the terms of the FMLA, "where the lack of notice had no effect on the employee's exercise of or attempt to exercise any substantive right conferred by the Act," is insufficient to state a cause of action. Sarno v. Douglas Elliman–Gibbons & Ives, Inc., 183 F.3d 155, 162 (2d Cir. 1999). On the other hand, the failure to provide notice that inhibits or restricts an employee from successfully obtaining leave or the right to reinstatement does result in a denial of benefits and can result in a cause of action for interference. See id.; see also Donnellan, No. 98-cv-1096, 1999 WL 527901, at *4 (finding the plaintiff had stated no claim for a violation of the FMLA because, despite the violation of the designation regulations, the plaintiff had received more than the twelve weeks of leave to which she was entitled under the FMLA).

Generally, then, when an employee has received his twelve weeks of leave in a given year and is discharged for being unable to return to work, the employee cannot maintain an interference claim. See, e.g., Roberts v. Health Ass'n, 308 F. App'x 568, 570 (2d Cir. 2009) (summary order); Sarno, 183 F.3d at 161–62 (holding that an employee's right to reinstatement was not impeded because of lack of proper notice, where he was unable to return to work after twelve weeks of leave). Thus, to succeed on an FMLA interference claim where an employee

17

has already taken the twelve weeks of leave, the employee must allege that he was actually prejudiced by the violation. See Ragsdale, 535 U.S. at 89.

The cases of Ridgeway v. RBS Grp., et al., No. 11-cv-976, 2012 WL 1033532 (March 28, 2012), and Vangas v. Montefiore Med. Ctr., 925 F. Supp. 2d 574 (S.D.N.Y. 2013), are useful in illustrating the nature of prejudice in the interference context. Ridgeway involved an employee with preexisting neck and back problems who had already taken some months of sick leave in compliance with company policy. Ridgeway, No. 11-cv-976, 2012 WL 1033532, at *1–2. The employee then informed his employer that he required surgery that would necessitate six to ten weeks of recovery and additional physical therapy. After learning that his surgeon had availability to perform the operation on a particular date, the employee discussed his leave options with his employer and the employer approved his twelve weeks of FMLA leave and some additional leave. The leave was planned around the elective surgery date. Relying on his employer's approval, the employee underwent surgery on the agreed-upon date. Id. at *2.

During the employee's leave, the employer altered its method of calculating FMLA leave. The employer then sent a number of confusing and contradictory letters to the employee, informing him in some letters that his leave would expire early. The employee called his employer to verify the information in the letters, but was told numerous times that his previously agreed-upon leave period was secure. The employee took his agreed-upon leave but was fired on the final day of his leave for violating his employer's leave policy. Id. at *2–3.

18

The <u>Ridgeway</u> court denied the defendant's motion to dismiss, holding that the employee stated a colorable claim that the employer interfered with the employee's right to take a federally protected leave of absence under the FMLA. Had the employee been timely notified of his employer's change in FMLA policy, he may not have scheduled his surgery at that time. Thus, the failure to provide notice interfered with the employee's ability to plan and use FMLA leave to schedule the elective surgery and recover from the surgery. <u>Id.</u> at *8.

In <u>Vangas</u>, the employee's four-month leave began immediately after she was diagnosed with cancer. The employee was not medically cleared to return to work after the twelve-week period expired, although the employee said she would "'do what [she had] to do to save [her] job.'" <u>Vangas</u>, 925 F. Supp. 2d at 577. She was ultimately unable to return to work at the end of her twelve weeks of FMLA leave and her employment was soon terminated.

The <u>Vangas</u> court granted defendant's motion to dismiss, finding that the employee did not have an FMLA cause of action for interference. The employee pled no facts to indicate that she could have returned to work at the end of her FMLA leave, "either because she was well enough to return or because she could have scheduled her FMLA leave better if she had had more notice," and the court found that the employee's "own pleadings show she could not return to work." <u>Id.</u> at 579.

The reasoning above does not militate a different result where an employee has received her twelve weeks of leave and is discharged after returning to work. Where an employee alleges that she was uninformed or misinformed about her

FMLA rights, the employee must still allege in the pleadings that proper access to her FMLA rights would have changed her behavior.

Here, Fernandez's interference claim is predicated upon Windmill's failure to notify him at the time he requested leave that he had a right to twelve weeks of FMLA leave and no more.  He admits that he took time off from work, but asserts that Windmill did not inform him that he was FMLA-eligible or that he had the right under the FMLA to take twelve weeks of sick leave in a year, and only twelve weeks.  See Am. Compl. ¶¶ 46–50.  Fernandez argues that these failures amount to an interference with the exercise of his rights under the FMLA.

Fernandez's interference claim is initially problematic because he took—indeed, exceeded—his statutory leave allowance, even without express permission of his employer.  But the lack of facts supporting an inference of prejudice is ultimately fatal to Fernandez's interference claim.  As in Vangas, Fernandez has failed to plead facts indicating that he could have returned to work at the end of twelve weeks of FMLA leave.  Fernandez does not contend that he was well enough to return after twelve weeks, nor does he argue that he could have better scheduled his FMLA leave if he had been notified of his rights, as in Ridgeway.  Accordingly, the amended complaint does not properly plead that Windmill interfered with Fernandez's exercise of his FMLA rights.

### 2. Retaliation Claim

To state a claim for FMLA retaliation, Fernandez must plausibly allege that he exercised rights protected by the FMLA and that he suffered an adverse employment action under circumstances giving rise to an inference of retaliatory

intent.  See Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 469 (S.D.N.Y. 2011).  For purposes of an FMLA retaliation claim, an adverse employment action is "any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." Millea v. Metro-N. R. Co., 658 F.3d 154, 164 (2d Cir. 2011) (applying Title VII retaliation standard for adverse employment actions to FMLA retaliation claims).

The adverse employment action must have been taken with retaliatory intent.  Retaliatory intent may be shown through a variety of means.  See, e.g., DeCintio v. Westchester Cnty. Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987).  When alleged retaliation occurs in close temporal proximity to an employee's exercising of federally protected employment rights, courts have inferred a retaliatory intent in satisfaction of that pleading requirement.  See Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010).  Although a two-month period in between a plaintiff's return from FMLA leave and removal from his post "does not completely vitiate his [retaliation] claim," the pleadings must otherwise indicate that the employer had retaliatory intent.  Potenza, 365 F.3d at 168.

Fernandez contends that Windmill retaliated against him for exercising his FMLA rights after he returned to work.  See Am. Compl. ¶ 48.  As currently pled, the facts surrounding Fernandez's termination do not give rise to an inference of retaliatory intent.

As noted above, Fernandez successfully obtained leave and returned to work on January 25, 2010.  Windmill permitted Fernandez to work for two full months, after which time Fernandez alleges he was discharged on March 25,

2010.  And while the two-month gap between Fernandez's return to work and the termination of his employment is not fatal to his claim, Fernandez pleads no facts giving rise to retaliatory intent during that two month period, during which time Fernandez was permitted to work as usual.  Nor has Fernandez specified that any of his protests of Windmill's allegedly unlawful FMLA practices actually led to his firing.  Indeed, there is no indication from the amended complaint that Fernandez's employment was ever <u>actually</u> terminated; instead, Fernandez alleges simply that he learned of his dismissal from Juan Hernandez, whose role at Windmill, if any, is nowhere specified in the amended complaint.  <u>See</u> Am. Compl. ¶ 42.

In sum, Fernandez has failed to allege cognizable interference and retaliation claims under the FMLA, and Windmill's motion to dismiss is therefore granted as to those claims.

B. <u>NYSHRL & NYCHRL Claims</u>

Fernandez also brings claims for discrimination on the basis of disability under the NYCHRL and the NYSHRL and retaliation under the NYCHRL.  Am. Compl. ¶¶ 52–70.

1. <u>Disability Discrimination</u>

To plead a case for disability discrimination for failure to accommodate under the NYSHRL and the NYCHRL, a plaintiff must show that:  (1) his employer was subject to the NYSHRL and the NYCHRL; (2) he was disabled, within the meaning of those statues; (3) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he

suffered adverse employment action because of his disability.  Mobley v. Madison Square Garden LP, No. 11-cv- 8290, 2012 WL 2339270, at *3 (S.D.N.Y. June 14, 2012) (citing Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184 n.3 (2d Cir. 2006)).

Windmill has moved to dismiss Fernandez's disability-discrimination claims on the basis of the third element noted in the above framework.  In other words, Windmill argues that Fernandez has failed to plead that he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation.  While the precise contours Windmill's argument are unclear, see Mot. to Dismiss at 11, it appears that Windmill is arguing that Fernandez cannot establish a discrimination case because an essential function of his job was coming to work, which he indisputably failed to do for sixteen weeks.

However, a plaintiff can satisfy the third element if he can show that he is able to perform the essential functions of his job if provided a reasonable accommodation.  Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 135 (2d Cir. 1995).  In this case, Fernandez alleges that he advised Windmill that he was disabled and required a reasonable accommodation, namely, an unpaid leave of absence.  Am. Compl. ¶¶ 54, 61.  This is sufficient for purposes of pleading colorable discrimination claims under the NYSHRL and the NYCHRL.

Fernandez's allegations are not vitiated simply because Fernandez took an extended leave, even though Windmill purportedly failed to provide him such an accommodation.  "[A] temporary leave of absence, even an extended leave, can be a reasonable accommodation."  LaCourt v. Shenanigans Knits, Ltd., No.

23

102391/11, 2012 WL 6765703, at *5 (N.Y. Sup. Ct. 2012). Indeed, "there is no accommodation (whether it be indefinite leave time or any other need created by a disability) that is categorically excluded from the universe of reasonable accommodation." Haight v. NYU Langone Med. Ctr., Inc., No. 13-cv-04993, 2014 WL 2933190, at *18 (S.D.N.Y. June 27, 2014) (quoting Phillips v. City of New York, 884 N.Y.S.2d 369, 378 (1st Dep't 2009)). At this stage, the plaintiff is entitled to every favorable inference. Id. The fact that Fernandez took an extended leave, after which he was allegedly terminated, does not preclude the finding that Windmill failed to reasonably accommodate him. Therefore, the amended complaint states a claim for disability discrimination under the NYCHRL and NYSHRL standards, and Windmill's motion to dismiss these claims is denied.

### 2. Retaliation

Finally, Windmill argues that Fernandez has failed to adequately plead retaliation under the NYCHRL. To plead a plausible NYCHRL retaliation claim, a plaintiff must allege that: (1) he participated in a legally protected activity; (2) his employer knew of the protected activity; (3) an adverse employment action ensued; and (4) a causal connection existed between the protected activity and the adverse employment action. See Stavis v. GFK Holding, Inc., 769 F. Supp. 2d 330, 339 (S.D.N.Y. 2011).

The amended complaint alleges that Windmill retaliated against Fernandez for taking an unpaid leave of absence. Am. Compl. ¶ 69. In response, Windmill argues that taking an unpaid leave of absence is not a protected activity within

the meaning of the NYCHRL.  Mot. Dismiss at 11–12.  Windmill is correct.  To be actionable, the alleged retaliation must have been in response to a protected activity.  "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."  Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000).  An employee engages in a protected activity when he complains of an employment practice that he reasonably believes violates the law.  Mayers v. Emigrant Bancorp, Inc., 796 F. Supp. 2d 434, 448 & n.19 (S.D.N.Y. 2011).  Taking FMLA leave is not a protected activity within the meaning of the NYCHRL.  Sotomayor v. City of New York, 862 F. Supp. 2d 226, 262 (E.D.N.Y. 2012); N.Y.C. Admin. Code § 8–107.  Therefore, Fernandez's NYCHRL retaliation claim is dismissed.

## III.   Leave to Further Amend the Pleadings

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires."  Fed. R. Civ. P. 15(a).  "When justice so requires necessarily implies justice to both parties."  See Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp., 455 F. Supp. 211, 215 (S.D.N.Y. 1978).  And although Rule 15(a) requires that leave should be granted freely, "it is within the sound discretion of the court whether to grant leave to amend."  See John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  The court may deny leave for good reason, "including futility, bad faith, undue delay, or undue prejudice to the opposing party."  See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).  "Mere delay, however, absent a showing of bad

25

faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); see also 6 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d, § 1487, at 613 (1990 & 2007 Supp.) (citing prejudice to the opposing party as "the most important factor" and "the most frequent reason for denying leave to amend").  Moreover, parties may amend their pleadings to assert new claims long after they acquired facts necessary to support those claims. See, e.g., Green v. Wolf Corp., 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (plaintiff was aware of facts asserted in amended complaint from outset of case).

In evaluating prejudice, courts consider whether an amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993).  Undue prejudice can arise when an "amendment [comes] on the eve of trial and would result in new problems of proof." Fluor Corp., 654 F.2d at 856 (reversing denial of leave to amend sought promptly after learning new facts, where "no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants" and where "the amendment will not involve a great deal of additional discovery"). Even this is not a hard and fast rule; the Second Circuit has explicitly allowed amendments on the eve of trial.  See, e.g., Hanlin v. Mitchelson, 794 F.2d 834 (2d Cir. 1986) (granting plaintiff's motion to amend

her complaint after the completion of discovery and after defendant filed a motion for summary judgment).

In this case, Windmill has provided no reasons why leave to further amend should not be granted. The court sees no independent and compelling reasons to deny leave to further amend.

## IV.   Conclusions

For the foregoing reasons, the court finds on the merits that Fernandez's claims need not be arbitrated, but that Fernandez's FMLA interference and retaliation claims, as well as his NYCHRL retaliation claim, is dismissed as a matter of law without prejudice. Fernandez's disability discrimination claims under the NYSHRL and NYCHRL survive Windmill's motion to dismiss. Windmill's motion is therefore granted in part and denied in part. Fernandez may further amend his pleadings in accordance with this opinion.


SO ORDERED.

Dated:  New York, New York
        February 4, 2016

_____
Thomas P. Griesa
United States District Judge